CROSLEY CORPORATION v. FEDERAL
COMMUNICATIONS COMMISSION.
In re STATION WLW.

No. 7351.

United States Court of Appeals for the
District of Columbia.

Argued April 19, 1939.

Decided June 26, 1939.

D. M. Patrick, of Washington, D. C.,
for appellant.

William J. Dempsey, General Counsel,
Federal Communications Commission, of
Washington, D. C., for appellee.

Before GRONER, Chief Justice, and
STEPHENS and VINSON, Associate Justices.

GRONER, C. J.

Appellant is the owner and operator of
a standard broadcast station (WLW) located in Cincinnati, Ohio. Its broadcasting
license permits operation on the frequency
of 700 kc. with power of 50 kw., unlimited
time. Since February 1, 1932, the Commission's rules governing licenses for
standard broadcast stations have limited to
50 kw. the amount of power on which such
a station may operate.[1] In April, 1934, upon application of appellant, the Commission
granted a "special experimental authorization" to increase the station power to 500
kw., effective to August 1, 1934, and upon
"the express condition that it may be terminated by the Commission at any time without advance notice or hearing if in its discretion the need for such action arises."
Extensions of the authorization upon the
same terms have been made by the Commission from time to time to 1939.

Since 1934 appellant's *standard broadcast license* (WLW) has been successively
renewed and is now in effect. It is not involved in this appeal. Appellant also holds
an additional experimental license to operate during the hours 12 o'clock midnight to
6 o'clock A. M., on the same frequency,
with 500 kw. power under call letters
W8XO. This license also is in effect at the
present time and is not involved in this appeal.

The temporary experimental authorization originally granted in 1934 was renewed

[1] Rule 117: The authorized power of a
dominant clear channel station shall not
be less than 5 kw. or more than 50 kw.

December 5, 1938, to continue until February 1, 1939, upon the following conditions:

"This modified special temporary experimental authorization is granted upon the express condition that it may be terminated by the Commission at any time without advance notice or hearing if in its discretion the need for such action arises.

"This modified special temporary experimental authorization is granted on the express condition that it is subject to whatever action may be taken by the Commission, upon the pending application of this station for renewal or extension of special experimental authority. Nothing contained herein shall be construed as a finding by the Commission that the operation of this station is or will be in the public interest beyond the express terms hereof."

January 24, 1939, the Commission again renewed the special authorization from February 1—"and ending in no event longer than 3:00 A. M., Eastern Standard Time, August 1, 1939" and, as in the former authorization, subject to be terminated by the Commission in its discretion at any time without advance notice or hearing.[2] Prior to the time the last permit issued, the Commission had appointed a committee of its members to consider whether or not it was desirable in the general interest of radio development to renew appellant's experimental authorization and also whether its Rule 117 should be amended so as to increase the amount of power allowable to clear channel stations. At that time a number of other broadcast stations were, and now are, applicants for increased power. In the latter part of 1938 the committee submitted to the full Commission a report recommending against renewal. Appellant received notice and filed exceptions. The Commission granted a hearing on December 22, and on February 8, 1939, filed its own report, accepting the recommendations of its committee and denying further renewal of appellant's experimental authorization. The Commission's ultimate conclusions were stated as follows:

"1. To the extent that a power output of 500 kw. may be necessary to carry out the applicant's proposed program of experimentation, in so far as it contemplates further investigation into the technical aspects of transmitter equipment, the applicant has sufficient authority to experiment in this field under its experimental license for Station W8XO [from midnight to dawn], and the extension of the special experimental authorization of Station WLW for this purpose is not justified.

"2. In so far as the proposed program of experimentation contemplates studies in the secondary service area of Station WLW requiring a power output of 500 kw., the experimentation can be carried on only during the nighttime, and the extension of the special experimental authorization of Station WLW permitting unlimited hours of operation on 500 kw. for this purpose is not justified.

"3. In so far as the proposed program of experimentation includes studies of daytime service, a power output of 500 kw. for Station WLW is not necessary, and therefore the extension of the special experimental authorization of Station WLW for this purpose is not justified."

Appellant filed a petition for rehearing specifying objections to the conclusions, but the Commission issued an order denying the petition and reviewing the grounds stated in the original report. Appellant then brought the case to this court by appeal under Sec. 402(b) (1) of the Act, 47 U.S.C.A. § 402(b) (1), and applied for a stay order pending decision. We declined to stay the effective date of the Commission's order, and for more than two months past appellant's daytime station has operated only on its 50 kw. power allotment.

The question we have to decide arises on the Commission's motion to dismiss on the ground that the court has no jurisdiction to entertain the appeal under any of the provisions of the appeal section of the Act.

Sec. 402 (b) provides that an appeal may be taken to this court from decisions of the Commission in any of the following cases: (1) by an applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

---

[2] The Communications Act of 1934, in Sec. 303 (g), authorizes the Commission to "study new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest". 47 U.S.C.A. § 303(g).

The Commission insists that appellant is not an applicant for a construction permit for a radio station or for a license or renewal or modification of an existing radio station license, but that its application is for an extension of an experimental authorization which was granted to it from time to time, not pursuant to the Commission's power under Sec. 309[3] to issue station licenses, but pursuant to the provisions of the Act authorizing the Commission to provide for "experimental uses" of frequencies. The Commission points out that appellant's application for a modification of its standard radio station license in respect to increased power is still pending before the Commission and unacted on.

Appellant, on the other hand, insists that its temporary license to carry on a program of experimentation was in legal effect a "Radio Station License" and that we have jurisdiction under Sec. 402(b) to review the Commission's refusal to renew.

By reference to the appeal provision of the Act, it becomes apparent at a glance that Congress has provided for appeals to this court from any order or decision of the Commission affecting the granting of and refusal of radio station licenses, and if what appellant got in the Commission's permit to it to use increased power was a station license as that term is used in the Act, the challenge to our jurisdiction would have to be denied. But in the view we take of the case it is not necessary, as appellant urges, to decide whether the temporary authorization is a "license." It may well be and yet not be the sort of license which Congress in Sec. 309 of the Act authorized the Commission to issue for broadcast purposes and which by Sec. 402 (b) Congress authorized us to review. Appellant has a station license issued under the former section, and its power under the terms of that license is limited to 50 kw. What it asked for and what it got in 1934 was a "special experimental authorization" to increase temporarily its power beyond the allowable limit for purely experimental purposes and subject to termination at the will of the Commission, and anything more than this would have been beyond the power of the Commission to grant under its own rules and regulations.

Whatever motive appellant may have had in requesting this unusual character of license or what use it may have put it to is, in our view, beside the case, for the fact remains that it understood the Commission's limitations and agreed that all rights under it were to cease and terminate whenever the Commission was satisfied that its usefulness in experimentation was at an end. At the time the grant was made the Commission was required to limit licenses for standard stations issued under Sec. 309 of the Act to the power of 50 kw. When it gave appellant more than this, manifestly it was assuming to act under Sec. 303 (g), which authorized it to endeavor by trial and experiment to determine how and in what manner larger results might be obtained in the use of frequencies. To this end, it said to appellant— You may for the time being increase the power of your station, in consideration of your reporting to us from time to time the scientific results obtained so that by expert and technical study of these we may determine whether it is or is not advisable

---

[3] Sec. 309. (a) If upon examination of any application for a station license or for the renewal or modification of a station license the Commission shall determine that public interest, convenience, or necessity would be served by the granting thereof, it shall authorize the issuance, renewal, or modification thereof in accordance with said finding. In the event the Commission upon examination of any such application does not reach such decision with respect thereto, it shall notify the applicant thereof, shall fix and give notice of a time and place for hearing thereon, and shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe.

(b) Such station licenses as the Commission may grant shall be in such general form as it may prescribe, but each license shall contain, in addition to other provisions, a statement of the following conditions to which such license shall be subject;

(1) The station license shall not vest in the licensee any right to operate the station nor any right in the use of the frequencies designated in the license beyond the term thereof nor in any other manner than authorized therein.

(2) Neither the license nor the right granted thereunder shall be assigned or otherwise transferred in violation of this chapter.

(3) Every license issued under this chapter shall be subject in terms to the right of use or control conferred by section 606 hereof. (June 19, 1934, c. 652, Sec. 309, 48 Stat. 1085.) 47 U.S.C.A. § 309.

to modify and change the rules and regulations controlling the amount of power that may be allotted to licensed radio stations. In 1935, in its First Annual Report to Congress, the Commission mentioned the grant to appellant as a special temporary experimental authority, and said:

"This additional authority to WLW was granted in the interest of developing the operation of broadcast stations with higher power in order to determine the interference and the benefits to the public which might result because of better reception generally."

And in the concluding part of the report it further said:

"The effects of the operation with this amount of power have not been fully determined in all respects although sufficient data are available to indicate that the service of the station is greatly improved. Also, the experimental operation being conducted offers a means of further studying the effects and the obtaining of additional data on which to base development of future policy on the operation of clear channel stations with a power in excess of 50 kilowatts."

 Undoubtedly, Congress intended by the inclusion of Sec. 303(g) to admonish the Commission to take the lead in exploring the possibilities of radio, and we think it unlikely that Congress had in mind a particular method to this end. Whether, therefore, the license or permit to appellant went further than the section contemplated, we need not decide. It is enough to say that, so far as appellant is concerned, if the Commission exceeded its authority, the permit and its renewals were wholly void. On the other hand, if the power granted in Sec. 303 (g) was sufficient to authorize experimental grants of the character in question, then it is clear the Commission had the right to apply conditions and to insist upon their observance, and in either view appellant has nothing to complain of.

 Appellant's position, as summarized by its counsel, is stated in the question— Can the Commission call a license by another name and deprive appellant of the right of judicial review given it by Congress? Manifestly, the answer would have to be—It cannot—and this answer, in one form or another, we have not in other cases hesitated to make from time to time when circumstances required it and in such cases

to admonish the Commission that its powers are limited and circumscribed by the Act of its creation and that in the exercise of these powers regard must always be had to the right of an applicant to notice and to a fair and full hearing, in which the evidence is received and weighed, and thereafter to be apprised of the precise grounds on which the decision is made. Nor have we hesitated when occasion demanded to set aside the orders of the Commission when there was a denial of these rights or when the action of the Commission could be fairly said, upon an inspection of the record, to show caprice or arbitrary action.

But appellant can complain in none of these respects in the instant case. Here the record shows that appellant was singled out from among all of its competitors to aid the Commission in a technical study of the problem before it and, while the study was in progress, received its quid pro quo in being permitted for five years to extend its service over a greater area than any other American station. In April, 1938, the Commission delegated to a committee of its membership the problem involved in the general use of increased power, including appellant's application for renewal of its experimental permit. The Committee held hearings on both propositions, in which appellant participated, and toward the end of the year, as the Committee's work neared its close, the Commission on December 5 again extended appellant's permit for a little less than two months and, as the latter date approached and the report of the Committee was not ready, again extended the time "in no event longer than 3:00 A. M. August 1, 1939," subject, however, to such action as the Commission at the close of its investigation might take. When the report finally was made, adverse to a continuation of the experimentation, appellant was duly notified, and at its request was accorded a hearing by the entire Commission. At this hearing appellant argued in favor of further investigation of the technical aspects of the transmitting equipment necessary in the use of 500 kw. power, but the Commission had reached and then announced the conclusion that no useful purpose could be accomplished by further daytime experimentation, but permitted the continuation of the use of the 500 kw. power during the nighttime hours (W8XO), apparently because in its opinion there were additional problems which could be profitably explored in the nighttime. It would serve no

useful purpose to follow the opinion of the Commission in its technical discussion of these questions. Certainly in nothing that appellant has offered is it shown that the conclusions reached were arbitrary or capricious, or that our finding of a lack of jurisdiction in the present case permits any action of that character with respect to regular broadcast station licenses to go unchecked.

In our opinion, appellant's petition for review, aside from the matters discussed in this opinion, wholly fails to take into consideration the nature of its agreement and the obligations assumed by it growing out of the same. Its present attitude is to insist upon a continuation of rights in disregard of its obligation to surrender them whenever the Commission declared they were no longer necessary for the purpose for which they were granted. It demands of us that we should disregard its agreement and the mutual purpose of its making, and treat what it received as something not intended by either the Commission or itself. This we cannot do under the statute— Universal Service Wireless v. Federal Radio Commission, 59 App.D.C. 319, 41 F. 2d 113; Pote v. Federal Radio Commission, 62 App.D.C. 303, 67 F.2d 509—and we ought not to do in this case regardless of the statute.

Appeal dismissed.

STEPHENS, Associate Justice.

I concur in the result reached by the majority, but I disagree with the reasoning because of certain implications therein. The majority opinion should I think limit itself to the narrow ground that either the "special temporary experimental authorization" was void because beyond the power of the Commission under the statute, or it was a kind of license not subject to the provisions of the statute concerning notice, hearing and review, and that in either such event the appellant would have no right of appeal to this court. But I think the opinion as written implies that the Commission has power to issue and terminate special experimental authorizations without conformance with the provisions of the statute for notice, hearing and review, and that the Commission can by contract with a licensee render ineffective or inapplicable those provisions. I think the court ought not to rule until it is necessary to do so on such grave questions as are involved in the alternatives stated.